TOM PANEBIANCO, APPELLANT, V. ARMAND BERGER, APPELLEE.

FILED JUNE 24, 1924. NO. 22556.

1. **Brokers:** DUAL AGENCY: RESCISSION. Where a real estate agent, with their full knowledge and assent, acted for both parties in a contract for an exchange of real estate, the fact of such dual agency furnishes no legal ground for rescission of the contract.

2. **Evidence** examined and found to fully sustain the decree of the lower court.

APPEAL from the district court for Douglas county: AR-THUR C. WAKELEY, JUDGE. *Affirmed.*

*Montgomery, Hall & Young,* for appellant.

*Brown, Baxter, Van Dusen & Ryan, contra.*

Heard before LETTON, ROSE, DEAN, DAY and GOOD, JJ., BLACKLEDGE and REDICK, District Judges.

REDICK, District Judge.

The action is one for the rescission of an executed exchange of improved real property in the city of Omaha for 400 acres of land in Holt county, Nebraska. The plaintiff was the owner of the Omaha property, which was put into the exchange at the agreed price of $12,000, subject to a mortgage of $4,000, and the defendant was the owner of

the land, which was put in at the agreed price of $16,000
and was clear of incumbrance, the difference between the
equity of the plaintiff and the value of the land, $8,000,
to be secured by a mortgage upon the land. Before the ex-
change of deeds, in consideration of an increase in the rate
of interest, the amount of the mortgage was reduced to
$7,600. The contract was entered into in November 1918,
and each party seems to have taken possession of the prop-
erty received in the trade soon after the exchange of
deeds. The plaintiff alleges that he was induced to enter
into the contract through the fraudulent representations of
the defendant and a real estate dealer, of the city of Lin-
coln, with whom plaintiff had listed his property for sale
or exchange; that by a secret arrangement, without the
knowledge or assent of plaintiff, defendant engaged said
agent to act as defendant's agent in making the exchange;
and that plaintiff did not discover the fraud and the falsi-
ty of the representations made until the year 1920 when
this suit was brought. The trial court found generally
in favor of the defendant, and plaintiff has appealed.

We have made a careful and painstaking examination
of the evidence as contained in the bill of exceptions, and
find that at the time of the contract plaintiff's property
was worth somewhat less than the value fixed in the con-
tract, but that his equity was worth not less than $5,000,
while the property of defendant had little, if any, value
above the amount of the mortgage thereon executed by the
plaintiff, and that the trade was a very disadvantageous
one for the plaintiff.

The facts leading up to the contract are substantially as
follows: The plaintiff, an Italian, was a shoemaker or a
cobbler by trade, and had lived in Omaha about 15 years.
One D. M. Douthett, a real estate agent of the city of Lin-
coln, Nebraska, having been introduced to plaintiff by a
common friend, in the spring of 1918 plaintiff listed his
property with Douthett for sale or exchange. On November
4, 1918, Douthett wrote the plaintiff a letter in the following
terms:

"Dear Tom: I have just found a piece of land in a good section of country that I believe can get you a good deal on for your property. This is 400 acres in the eastern part of Holt county, about 75 miles northwest of Grand Island, which brings it in about the same section of country, that is, the same kind of a country, as up around Overton and Elmcreek. This land was bought by a Frenchman 10 or 12 years ago, and he went to France, lost his wife, and came back and wrote me to sell this land for him. His price is $40 an acre and the price is all right. The thought struck me that if I could only trade your property in Omaha for this, it would make you a fine deal, so I wrote him and told him about it, giving him a good description of it, just as it was, and also spoke of it to him in the highest terms. I have a letter from him today that he will consider it and I am now writing him asking him when he can meet me in Omaha and look at your property. I think I can have him down there Sunday or Monday. Land in this vicinity has been selling mighty well all summer and I have some myself not very far away from it. Let me hear from you in regard to this. Don't believe we'll ever get a better chance for your property. Very truly,

"D. M. Douthett."

Plaintiff replied as follows:

"Your letter of Nov. 4 received and was very glad to hear from you. I have the greatest confidence in your judgment, and if you say this is a good deal. I have no doubt you know what you are talking about. I will be pleased to have you bring your man here as you say Sunday or Monday. That will be satisfactory to me. If you come Sunday and the shop is closed come to the house, 715 No. 33 about 1½ blocks south on same side of street. Since the first of the month, one store is empty, on account of tenant having gone to war. But this ought to make no difference under the circumstances."

November 7 Douthett wrote the plaintiff arranging a meeting for the following Sunday in Omaha, and suggesting that they would go out and look at plaintiff's property

Panebianco v. Berger.

and go that evening to see the land, to which plaintiff replied: "I just received your letter and I would be glad to meet you at Merchants Hotel at 1:20 p. m. Sunday, and with your friend, we go see the property together." He then stated he could not go out to see the land at that time on account of sickness in his family. The parties met as arranged and went out and inspected plaintiff's property, and after some discussion the terms of the contract as finally carried out were agreed upon, the contract reduced to writing and signed by the defendant, but was not signed by plaintiff until two weeks later after plaintiff had been out with Douthett to inspect the land, the contract containing a provision that it was "made subject to the inspection of first party's land by second party." There is considerable conflict in the testimony as to what was said at the meeting in Omaha with reference to the value, character and quality of defendant's land, but the allegations of misrepresentations alleged to have been made by the defendant personally do not appear to be supported by a preponderance of the evidence, and plaintiff's cause of action must fail unless plaintiff has established that he did not know that the agent was acting for both parties.

There is no serious dispute as to the law applicable to the facts in this case, and it is stated as follows in 31 Cyc. 1572:

"An agent may with their full knowledge and consent represent both parties to a contract, and his contracts under these circumstances bind each within the scope of his authority. But where an agent without the full knowledge and consent of his principal represents the adverse party in a transaction, his contracts relating thereto are voidable at the option of the principal."

In the course of the transaction the agent served in a dual capacity for both parties and collected a commission from each. The defendant knew that the agent assumed to act for both, but the plaintiff denies having had such knowledge, and the case turns upon the determination of this question of fact.

The plaintiff testifies that he had no knowledge or information that Douthett was acting as the agent for the defendant until about a year after the trade had been consummated, when Douthett informed plaintiff that he had received a commission from the defendant in the deal. On the other hand, the defendant testified that at the meeting in Omaha, which was the only one ever had between the parties, he told the plaintiff that Douthett was his agent, and he is corroborated by the testimony of the agent. It appears from the evidence that the plaintiff had not had any experience in the purchase and sale of farm lands and was not acquainted with their character and value, and that he relied implicitly upon the statements and judgment of his agent. The evidence, however, does not warrant the inference that plaintiff was an ignorant man or entirely unacquainted with business transactions. He had purchased the Omaha property and improved it with a brick building from which he was receiving rents in the neighborhood of $75 a month, and his manner of answering questions, so far as the record shows, indicates that he was a man of at least ordinary intelligence; so that, while he was engaged in a lowly occupation and was a foreigner by birth, it cannot be claimed from the evidence, and the case is not presented upon the theory, that he was imposed upon and defrauded because of his ignorance and general lack of capacity in business transactions. But, while it is alleged that plaintiff was ignorant on the subject of the character of farm lands, as already noted, it is also alleged and the case is presented upon the proposition that plaintiff's agent, secretly and without plaintiff's knowledge or assent, acted as agent for the sale of defendant's land. The district court, while its finding was generally for the defendant, must necessarily have found against the plaintiff on this issue; and, while the plaintiff is entitled to a trial *de novo* in this court on this appeal and we are required to reach an independent conclusion upon the facts without reference to the conclusion reached by the district court, we have held that where the determination of a fact rests

upon conflicting testimony, requiring the court to determine which witness has testified falsely, we have a right to and should consider the fact that the trial court observed the witnesses and their manner of testifying and must have accepted one version of the facts rather than the opposite. *State v. Leflang,* 108 Neb. 138; *Miksch v. Tassler,* 108 Neb. 208.

In the present case the letter of the agent to plaintiff initiating the transaction complained of, and quoted above, contained the following expression: "This land was bought by a Frenchman 10 or 12 years ago, and he went to France, lost his wife, and came back and wrote me to sell this land for him." And plaintiff in his reply said: "I will be pleased to have you bring your man here as you say Sunday or Monday." Further than this, while plaintiff denied that he knew that the agent was handling Berger's land for him, he admitted that the agent told him that Berger wrote about the land and asked him to sell the land for him; and then in answer to the next question testified that he did not say anything about it, but then admitted that he knew that Douthett had a letter from Berger telling him that the land was for sale. We think from a consideration of this evidence we would not be justified in holding that the finding of the lower court was clearly wrong, but must rather conclude that it is sustained by a preponderance of the evidence. If it be true, as claimed by the plaintiff, that he did not learn that defendant paid the agent a commission on the exchange until a year later, though Douthett testifies that he informed him of that fact, this fact alone would not establish plaintiff's ignorance of Douthett's agency for Berger, for payment of a commission was an ordinary consequence of the employment of Douthett by defendant to sell the land, of which fact we find plaintiff was informed. Plaintiff paid a commission to the agent based only upon the value of his equity in the lots.

We think that, disregarding the conflicting testimony of the witnesses, plaintiff was charged with knowledge that his agent was also acting as agent for the sale of defendant's

land by the letter of November 4, 1918, and that he was not justified in relying upon the statements of the agent and cannot charge defendant with responsibility therefor, especially in view of the fact that he inspected the land and had every opportunity to learn the facts before signing the contract. If, as he says, he knew nothing about lands or their value, made no real inspection, and would have made the trade without inspection relying upon the agent, this does not excuse him under the circumstances.

Upon more mature consideration, we conclude that our former opinion should be vacated and withdrawn, and the judgment of the district court affirmed.

AFFIRMED.

Note—See Brokers, 9 C. J. p. 540, sec. 40; p. 678, sec. 161.